1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    YUE ZHOU, et al.,                          Case No. 21-cv-06067-AMO

8                   Plaintiffs,

9           v.                                  **ORDER RE MOTION FOR SUMMARY
                                                JUDGMENT**
10   SIN KIONG CHAI, et al.,
                                                Re: Dkt. No. 92
11                  Defendants.

12          Yue Zhou, Yiwei Zeng, Tianmao Zhu, and Guohuo Zheng (collectively, "Plaintiffs") move

13   for summary judgment on their claims against Sin Kiong Chai and Huei Chu Chai[1] (together,

14   "Defendants") for violations of wage and hour laws, California's Unfair Competition Law, Cal.

15   Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL"), and the Private Attorneys General Act of 2004,

16   Cal. Lab. Code §§ 2698, *et seq.* ("PAGA").  They also seek summary judgment on Defendants'

17   affirmative defenses.  Having considered the papers filed by the parties, the relevant legal

18   authority, and good cause appearing, Plaintiffs' motion is **GRANTED IN PART AND DENIED**

19   **IN PART** for the reasons set forth below.

20   I.     **BACKGROUND**

21          A.     **Factual background**

22          The undisputed facts relevant to Plaintiffs' wage and hour claims, and their UCL claim, are

23   as follows.

24          Defendants employed Yue Zhou as a cook from March 9, 2020 through July 11, 2021.

25   ECF 93-1 at 4; ECF 93-2 at 2.  Zhou worked six days a week.  ECF 93-1 at 4; ECF 93-2 at 2.

26   Defendants paid Zhou a monthly salary of $4,200 from March 9, 2020 through December 31,

27   _____

28   [1] As alleged in the operative complaint, at the times relevant to this action, Defendants were doing
     business as the Taste of China Restaurant, located in San Jose, California.  ECF 20 at 2.

United States District Court
Northern District of California

2020, and a monthly salary of $4,420 from January 1, 2021 through July 11, 2021, as net pay after making withholdings for taxes and deductions.  ECF 93-1 at 4; ECF 93-2 at 2; ECF 93-3 at 2. Defendants paid Zhou with a combination of cash and checks.  ECF 93-1 at 4; ECF 93-2 at 2.  The cash payments were not reflected in Zhou's itemized wage statements, which also did not show the last four digits of Zhou's social security number or an employee identification number other than a social security number within the meaning of California Labor Code § 226(a)(7).  ECF 93-1 at 4-5; ECF 93-2 at 2.

Defendants employed Yiwei Zeng as a cook from September 26, 2019 through October 26, 2020.  ECF 93-1 at 6; ECF 93-2 at 4.  Zeng worked five days a week between September 26, 2019 and March 15, 2020, and four days a week from March 16, 2020 to October 26, 2020.  ECF 93-1 at 6; ECF 93-2 at 4.  Defendants paid Zeng a daily wage of $200 from September 26, 2019 through October 26, 2020, as net pay after making withholdings for taxes and deductions.  ECF 93-1 at 6; ECF 93-2 at 4.  Defendants paid Zeng with a combination of cash and checks.  ECF 93-1 at 6; ECF 93-2 at 4.  The cash payments were not reflected in Zeng's itemized wage statements, which also did not show the last four digits of Zeng's social security number or an employee identification number other than a social security number within the meaning of California Labor Code § 226(a)(7).  ECF 93-1 at 6; ECF 93-2 at 4.

Defendants employed Tianmao Zhu as a cook from February 25, 2021 through June 30, 2021.  ECF 93-1 at 5; ECF 93-2 at 3.  Zhu worked six days a week.  ECF 93-1 at 5; ECF 93-2 at 3. Defendants paid Zhu a monthly salary of $4,200, as net pay after making withholdings for taxes and deductions.  ECF 93-1 at 5-6; ECF 93-2 at 3.  Defendants paid Zhu with a combination of cash and checks.  ECF 93-1 at 6; ECF 93-2 at 3-4.  The cash payments were not reflected in Zhu's itemized wage statements, which also did not show the last four digits of Zhu's social security number or an employee identification number other than a social security number within the meaning of California Labor Code § 226(a)(7).  ECF 93-1 at 5; ECF 93-2 at 4.

Defendants employed Guohuo Zheng as a cook from October 6, 2019 through October 19, 2021.  ECF 93-1 at 5; ECF 93-2 at 2.  Zheng worked six days a week.  ECF 93-1 at 5; ECF 93-2 at 2-3.  Defendants paid Zheng a monthly salary of $3,500 from October 6, 2019 through December

31, 2019, and a monthly salary of $3,600 from January 1, 2020 through July 11, 2021,[2] as net pay after making withholdings for taxes and deductions. ECF 93-1 at 5; ECF 93-2 at 3. Defendants paid Zheng with a combination of cash and checks. ECF 93-1 at 5; ECF 93-2 at 3. The cash payments were not reflected in Zheng's itemized wage statements, which also did not show the last four digits of Zheng's social security number or an employee identification number other than a social security number within the meaning of California Labor Code § 226(a)(7). ECF 93-1 at 5; ECF 93-2 at 3.

From September 26, 2019 to March 14, 2020, each cook working on a weekday worked ten hours per day, from 10:30 a.m. until 9:30 p.m., with a one-hour break between 3:00 p.m. and 4:00 p.m. ECF 93-6 at 9; ECF 93-18 at 12-13, 15. Any cook working on a weekend day worked nine hours each day, from 11:30 a.m. until 9:30 p.m., with a one-hour break between 3:00 p.m. and 4:00 p.m. ECF 93-5 at 1; ECF 93-18 at 12-13, 15.

Between March 15, 2020 and June 17, 2021, each cook working on a weekday worked nine hours per day, from 10:30 a.m. until 8:30 p.m., with a one-hour break between 3:00 p.m. and 4:00 p.m. ECF 93-5 at 1-12; ECF 93-18 at 15-16. On weekend days, they worked eight hours, from 11:30 a.m. until 8:30 p.m., with a one-hour break between 3:00 p.m. and 4:00 p.m. ECF 93-5 at 1-12; ECF 93-18 at 15-16.

On June 18, 2021 and June 19, 2021, each cook working on the weekday worked ten hours, from 10:30 a.m. until 9:30 p.m., with a one-hour break between 3:00 p.m. and 4:00 p.m. ECF 93-5 at 12; ECF 93-18 at 18-19. Each cook working on the weekend day worked nine hours, from 11:30 a.m. until 9:30 p.m., with a one-hour break between 3:00 p.m. and 4:00 p.m. ECF 93-5 at 12; ECF 93-18 at 18-19.

Between June 20, 2021 and October 19, 2021, each cook working on a weekday worked nine and a half hours per day, from 10:30 a.m. until 9:00 p.m., with a one-hour break between 3:00 p.m. and 4:00 p.m. ECF 93-5 at 12; ECF 93-18 at 19. Each cook working on a weekend day worked eight and a half hours per day, from 11:30 a.m. until 9:00 p.m., with a one-hour shift break

---

[2] Plaintiffs point to no evidence in the record establishing Zheng's salary from July 12, 2021 through October 19, 2021. *See* ECF 92 at 9.

between 3:00 p.m. and 4:00 p.m.  ECF 93-5 at 12; ECF 93-18 at 19.[3]

The following undisputed facts are relevant to Plaintiffs' PAGA claim.  On July 23, 2021, Plaintiffs submitted a notice of labor code violations (the "PAGA Notice") to the California Labor and Workforce Development Agency ("LWDA").  ECF 93 ¶ 2.  The agency acknowledged receipt via email the same day.  ECF 93 ¶ 2; ECF 93-19.  On July 24, 2021, Plaintiffs sent a copy of the notice to Defendants via certified mail, which Defendants received.  ECF 93 ¶¶ 3-4; ECF 93-1 at 3; ECF 93-2 at 2.  Since the mailing of the PAGA Notice, "[n]o notice of investigation had been received from the LWDA in the statutorily proscribed 65-day period[.]"[4]  ECF 93 ¶ 5.

The following additional facts were deemed established as evidentiary sanctions.  *See* ECF 90.  "At all times within the statute of limitations of Plaintiffs' PAGA claims, Defendants had three full-time cooks."  *Id.* at 1.  Defendants paid these cooks fixed monthly salaries.  *Id.*  The hourly rates indicated on these cooks' wage statements did not reflect their actual hourly rates.  *Id.*  Defendants also had six full-time non-cook employees, such as waiters and kitchen helpers.  *Id.* at 2.  These employees were paid hourly rates.  *Id.*  The hourly rates reflected on these employees'

---

[3] The times set forth above are based on Zhou's and Zeng's work schedules, and reconstructions of the work schedules for Zhu and Zheng.  *See* ECF 93-5, 93-6, 93-9, 93-10.  The Zhu and Zheng reconstructions are based on the schedules of Zhou and Zeng.  *See* ECF 93-2 ¶¶ 10-11, 14-15.  As to Zhou's work schedule, Huei Chai testified that it "is not necessarily a timecard, but I'm showing what hours he worked.  That may not be exactly accurate."  ECF 93-18 at 6.  Defendants, however, have posed no objection to the schedules in the record, including the reconstructions.  Moreover, when asked whether Zhou's work schedule was equally applicable to other cooks, Huei Chai responded "[y]es, yes."  ECF 93-18 at 12.  Plaintiffs did not punch timecards, and while the evidence they proffer here as to work hours may not be fully accurate, "[w]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, . . . the solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work."  *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986) (internal quotations and citation omitted).  Here, Plaintiffs have reasonably shown that they have "in fact performed work for which [they were] improperly compensated" by producing the work schedules in the record and related deposition testimony, which constitute "sufficient evidence to show the amount and extent of that work *as a matter of a just and reasonable inference.*"  *See id.* (internal quotations and citation omitted; emphasis in original).

[4] Under PAGA, "[i]f the agency does not investigate, does not issue a citation, or fails to respond to the notice within 65 days, the employee may sue."  *Kim v. Reins Int'l California, Inc.*, 9 Cal. 5th 73, 81 (2020) (citing Cal. Lab. Code § 2699.3(a)(2)).

United States District Court
Northern District of California

wage statements were their actual hourly rates.  *Id.*

### B.    Procedural background

Plaintiff Zhou initially commenced this action on August 6, 2021.  ECF 1.  The operative

third amended complaint, which adds Zeng, Zhu, and Zheng as Plaintiffs, asserts claims for

(1) failure to pay overtime compensation in violation of the Section 207 of Fair Labor Standards

Act, 29 U.S.C. §§ 201, *et seq.* (the "FLSA"); (2) failure to pay minimum wage under California

Labor Code §§ 1182.12, 1194, and 1197, California Minimum Wage Order MW-2007, and San

Jose Municipal Code § 4.100.040; (3) failure to pay overtime compensation in violation of

California Labor Code §§ 510 and 515; (4) failure to timely pay wages due and owing upon

termination of employment in violation of California Labor Code §§ 201 and 202; (5) failure to

provide rest and meal periods in violation of California Labor Code §§ 226.7 and 512; (6) failure

to furnish accurate itemized wage statements in violation of California Labor Code § 226(a);

(7) violation of the UCL; and (8) civil penalties under PAGA.  ECF 20 ¶¶ 42-84.

On March 13, 2022, each Defendant separately filed an answer to the third amended

complaint, asserting laches, waiver, estoppel, failure to state a claim (based on a purported

ambiguity in the complaint as to whether Plaintiffs are classified as exempt or non-exempt), unjust

enrichment (based on Defendants' payment of the entirety of FICA taxes, including Plaintiffs'

portion), and unclean hands (based on Plaintiffs' purported failure to pay the proper amount of

FICA taxes) as affirmative defenses.  ECF 31 at 6; ECF 32 at 6.  In their answers, Defendants

reserved the right to amend, modify, or supplement their affirmative defenses.  ECF 31 at 6; ECF

32 at 6.

After extensive briefing on discovery disputes which culminated in an order imposing

evidentiary sanctions against Defendants, on November 10, 2023, Plaintiffs moved for summary

judgment on all claims except the fifth cause of action.[5]  ECF 87, 90, 92.  On December 1, 2023,

Plaintiffs filed a notice alerting the Court to Defendants' failure to file an opposition to the motion

---

[5] Plaintiffs had previously moved for partial summary judgment after seeking leave of Court.  ECF
81, 83.  That motion was terminated after Plaintiffs requested, and were granted, leave of Court to
file a full motion for summary judgment.  ECF 85, ECF 91.

United States District Court
Northern District of California

1    by the November 24, 2023 due date.[6]  ECF 94.  On December 3, 2023, Defendants filed a

2    document styled as an opposition.  ECF 95.  The argument section of the two-page filing reads:

3                Defendants and Plaintiffs agreed to a payment of wages in
         the form of a monthly salary per se; however, Defendants contends
4        [sic] that there is a genuine dispute as to material facts relating to
         whether the salaries were "fixed."  Plaintiffs' wages fluctuated
5        between different accounting periods.  Defendants argue that this
         evidence demonstrates the Plaintiffs' wages were at all times
6        connected to actual hours worked.  Therefore, although the parties
         had labeled their understanding related to the payment of wages as a
7        salary agreement, Defendants argue that the salaries were not
         "fixed," – but rather, the parties had salary agreements per se but not
8        in actual fact.  Specifically, Defendants maintain that the "fixed"
         salaries were inclusive of overtime hours (e.g. that the payment of
9        each Plaintiff a total amount of money per given period was to
         include all their work hours both regular and overtime).  See Exhibit
10       A.[7]

11                As there are genuine issues of material facts relating to
         whether the agreement between the parties for the payment of wages
12       is invalid and/or whether the agreement constitutes a salary
         agreement, Defendants submit that this issue is inappropriate to be
13       decided on summary judgment.

14    ECF 95 at 2.  Plaintiffs filed did not file a reply to Defendants' untimely opposition.

15    **II.      LEGAL STANDARD**

16         A party may move for summary judgment on a "claim or defense" or "part of . . . a claim

17    or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine

18    dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  *Id.*

19    The party seeking summary judgment bears the initial burden of informing the court of the basis

20    for its motion and identifying those portions of the pleadings and discovery responses that

21    demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

22    317, 323 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v.*

23    *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there

24    is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

25    _____

26    [6] In the notice, Plaintiffs requested dismissal of their fifth cause of action for rest and meal break
      violations.  ECF 94 at 2.  That request, to which Defendants have filed no opposition, is
27    **GRANTED**, and Plaintiffs' fifth cause of action is **DISMISSED**.

28    [7] Despite the reference to an exhibit, Defendants did not include one with their opposition.

United States District Court
Northern District of California

1    Where the moving party will have the burden of proof at trial, it must affirmatively

2    demonstrate that no reasonable trier of fact could find other than for the moving party.

3    *Soremekun v. Thrifty Payless*, *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the

4    nonmoving party will bear the burden of proof at trial, the moving party may carry its initial

5    burden of production by submitting admissible "evidence negating an essential element of the

6    nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party

7    does not have enough evidence of an essential element of its claim or defense to carry its ultimate

8    burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d

9    1099, 1105-06 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324-25 (moving party can prevail

10   merely by pointing out to the district court that there is an absence of evidence to support the

11   nonmoving party's case).

12    When the moving party has carried its burden, the nonmoving party must respond with

13   specific facts, supported by admissible evidence, showing a genuine issue for trial.  Fed. R. Civ. P.

14   56(c), (e).  But disputed facts must be material – the existence of only "some alleged factual

15   dispute between the parties will not defeat an otherwise properly supported motion for summary

16   judgment."  *Anderson*, 477 U.S. at 247-48.  When deciding a summary judgment motion, a court

17   must view the evidence in the light most favorable to the non-moving party and draw all

18   justifiable inferences in its favor.  *Id.* at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th

19   Cir. 2011).  However, when a non-moving party fails to produce evidence rebutting defendants'

20   showing, then an order for summary adjudication is proper.  *Nissan Fire*, 210 F.3d at 1103 ("If the

21   nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the

22   moving party wins the motion for summary judgment.").  The court's function on a summary

23   judgment motion is not to make credibility determinations or weigh conflicting evidence with

24   respect to a disputed material fact.  *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809

25   F.2d 626, 630 (9th Cir. 1987).

26   ///

27   ///

28   ///

United States District Court
Northern District of California

7

III.     DISCUSSION

As a preliminary matter, the Court notes that although California and federal law exempt certain classes of employees from the protections available under the statutes on which Plaintiffs rely, *see, e.g.*, Cal. Lab. Code § 515(a); 29 U.S.C. § 213(a)(1), neither side presented any briefing on whether Plaintiffs were nonexempt employees, as alleged in paragraphs 20, 27, 33, and 38 of the operative complaint.  *See* ECF 20 ¶¶ 20, 27, 33, 38.  Nonetheless, the Court takes judicial notice of Defendants' answers, in which they admit the allegations Plaintiffs make in those paragraphs.  ECF 31 ¶¶ 20, 27, 33, 38; ECF 32 ¶¶ 20, 27, 33, 38.  In light of Defendants' admission that Plaintiffs were nonexempt employees,[8] the Court now turns to Plaintiffs' claims for relief before addressing Defendants' affirmative defenses, consistent with the sequence in which they are presented in Plaintiffs' opening brief.[9]

A.     Plaintiffs' Claims

1.     Claim 1 (Unpaid Overtime under the FLSA) and Claim 3 (Unpaid Overtime under California Law)

Plaintiffs' first and third claims are for unpaid overtime compensation under federal and state law.  ECF 20 ¶¶ 42-45, 55-59.  The Court first addresses the claim Plaintiffs bring under the FLSA before turning to the overtime claim they bring under the California Labor Code.

a.     Overtime under the FLSA

The FLSA requires that, unless exempt, any employee who works more than 40 hours in a work week must be paid one and one-half times the employee's "regular rate" of pay.  29 U.S.C.

---

[8] Even if Defendants had not admitted that Plaintiffs were nonexempt, "the assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption."  *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 794-95 (1999); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 197 (1974) ("[T]he application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof.").  As discussed later in this order, Defendants have put forth no proof in support of their affirmative defenses nor opposed Plaintiffs' arguments in support of summary judgment as to those defenses.

[9] The Court follows Plaintiffs' sequencing even where claims are not addressed in numerical order.  For example, Plaintiffs address their overtime claims (Claims 1 and 3) together and brief the PAGA claim (Claim 8) before the UCL claim (Claim 7).  *See* ECF 92 at 8-14, 20-27.

United States District Court
Northern District of California

United States District Court
Northern District of California

§ 207(a)(1).  The FLSA defines "regular rate" broadly as "all remuneration for employment." *Id.* § 207(e).  "Courts have defined regular rate more specifically as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Parth v. Pomona Valley Hosp. Med. Ctr.*, No. CV 06-04703 MMM (FFMx), 2007 WL 9193688, at *6 (C.D. Cal. Dec. 5, 2007) (internal quotations and citations omitted).  " ' [A]bsent explicit proof of a mutually agreed upon rate of hourly pay, the regular rate actually paid to a salaried employee is obtained by dividing the employee's weekly wage by the number of hours worked each week. ' " *Sillah v. Command Int'l Sec. Services*, 154 F. Supp. 3d 891, 911 (N.D. Cal. 2015) (quoting *Bao Yi Yang v. Shanghai Gourmet, LLC*, 471 F. App'x 784, 786 (9th Cir. 2012)).  If an employee's salary "covers a period longer than a workweek, such as a month, it must be reduced to its workweek equivalent" for purposes of calculating the employee's hourly rate.  29 C.F.R. § 778.113(b).  "A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks)." *Id.*  "The regular rate of pay at which the employee is employed may in no event be less than the statutory minimum." *Id.* § 778.107.

Employers who fail to pay required overtime "are liable for damages in the amount of the unpaid overtime, 'an additional equal amount as liquidated damages,' and 'reasonable attorney's fee[s] . . . and costs.' " *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1102 (9th Cir. 2018) (quoting 29 U.S.C. § 216(b)).  Where an employee "sues for unpaid overtime under both the FLSA and the California Labor Code, FLSA liquidated damages are calculated based on the FLSA regular rate of pay even if the plaintiff's damages for the actual amount of unpaid overtime is calculated based on the California Labor Code regular rate of pay."[10] *Sillah*, 154 F. Supp. 3d at 913 (citations omitted).

---

[10] "The liquidated damages are mandatory unless the employer establishes both subjective and objective good faith in its violation." *Sillah*, 154 F. Supp. 3d at 913.  Defendants have proffered no such evidence here.

United States District Court
Northern District of California

Plaintiffs do not adequately substantiate their FLSA claims.  They assert "Exhibits 7-10 show the[ir] . . . overtime hours."  ECF 92 at 13.  But those exhibits consist of reconstructed work schedules that purport to correct Defendants' calculation of errors of overtime hours, which Plaintiffs proffer as "demonstrative evidence."  ECF 93 ¶¶ 12-15.  These exhibits do not indicate when each Plaintiff's workweek started,[11] which is necessary for assessing when they met the 40-hour threshold, do not include final tabulations of the overtime hours claimed, and are not mapped to the summary tables Plaintiffs include in their brief.  For example, Plaintiffs calculate unpaid FLSA overtime as follows:

|       | starting date | closing date | OT hours | hourly rate | OT compensation |
|-------|---------------|--------------|----------|-------------|-----------------|
| Zeng  | 9/1/19        | 12/31/19     | 91.5     | $28.75      | $2,631          |
|       | 1/1/20        | 10/26/20     | 86       | $28.75      | $2,473          |
|       |               |              |          | total       | $5,104          |
|       |               |              |          |             |                 |
| Zheng | 10/6/19       | 12/31/19     | 233      | $23.22      | $5,410          |
|       | 1/1/20        | 12/31/20     | 663      | $23.88      | $15,832         |
|       | 1/1/21        | 10/19/21     | 536      | $23.88      | $12,800         |
|       |               |              |          | total       | $34,042         |
|       |               |              |          |             |                 |
| Zhou  | 3/9/20        | 12/31/20     | 468      | $27.87      | $13,043         |
|       | 1/1/21        | 7/11/21      | 266      | $29.33      | $7,802          |
|       |               |              |          | total       | $20,845         |
|       |               |              |          |             |                 |
| Zhu   | 2/25/21       | 6/30/21      | 209      | $27.87      | $5,825          |

ECF 92 at 13-14.

Plaintiffs, however, do not correlate the above figures to any of the voluminous exhibits in the record.  And, for Zeng, the calculations purport to commence on September 1, 2019, *see id.*, though his employment did not begin on September 26, 2019.  *See* ECF 93-1 at 6; ECF 93-2 at 4.

///

///

///

---

[11] Under the FLSA, "[a]n employee's workweek is a fixed and regularly recurring period of 168 hours – seven consecutive 24-hour periods."  29 C.F.R. § 778.105.

United States District Court
Northern District of California

1    Additionally, Plaintiffs' proposed calculations of the applicable regular rates of pay are not

2    in line with the FLSA's framework discussed above.  Their calculations are as follows:

3    - Zeng: $200x115%/8=$28.75

4    - Zheng: $3,500 x115%x 12/52/40=$23.22; $3,600 x. 115% x
         12/52/40=$23.88
5
6    - Zhou: $4,200 x 115%x12/52/40=$27.87; $4,420 x 115%
         x12/52/40=$29.33
7    - Zhu: $4,200 x115% x12/52/40=$27.87

8    ECF 92 at 13.

9    These calculations do not account for the hours each Plaintiff worked each week, which

10   fluctuated at different points during the relevant period.  Nor do they account for the missing

11   salary range for a portion of Zheng's term of employment.  Additionally, Plaintiffs assume that

12   "tax and withholdings presumptively amounted to at least 15% of Plaintiffs' gross earnings," and

13   thus true-up the base wages incorporated into their calculations by that amount.  They offer no

14   legal authority or evidentiary support for that adjustment.  Accordingly, given these deficiencies in

15   Plaintiffs' proposed calculations, the Court **DENIES** summary judgment on their FLSA overtime

16   claim.

17                    **b.    Overtime under California law**

18   Like the FLSA, California law requires that any work in excess of forty hours in a

19   workweek be compensated at one and one-half times the employee's regular rate of pay.  Cal. Lab.

20   Code § 510(a).  In addition, California law requires that "[a]ny work in excess of eight hours in

21   one workday" be compensated "at the rate of no less than one and one-half times the regular rate

22   of pay for an employee."  *Id.*  For a nonexempt full-time salaried employee, the regular hourly rate

23   is one-fortieth of the employee's weekly salary.  *Ghory v. Al-Lahham*, 209 Cal. App. 3d 1487,

24   1490 (1989) (explaining that "when calculating overtime compensation due a salaried employee,

25   his or her regular rate of pay must be computed by dividing the total weekly salary by no more

26   than 40 hours, regardless of the number of hours actually worked.") (internal quotations and

27   citation omitted).  Moreover, "[a]bsent an *explicit, mutual* wage agreement, a fixed salary does not

28   serve to compensate an employee for the number of hours worked under statutory overtime

requirements." *Hernandez v. Mendoza*, 199 Cal. App. 3d 721, 725 (1988) (emphasis in original).

Here, Plaintiffs' work schedules show that they routinely worked more than eight hours per day. *See* ECF 93 ¶¶ 10-11, 14-15; ECF 93-5; ECF 93-6; ECF 93-9; ECF 93-10. Defendants assert that Plaintiffs' "salaries were inclusive of overtime hours (e.g. that the payment of each Plaintiff a total amount of money per given period was to include all their work hours both regular and overtime)." ECF 95 at 2. They also assert that "there is a genuine dispute as to material facts relating to whether the salaries were 'fixed' " because "Plaintiffs' wages fluctuated between different accounting periods." *Id.* According to Defendants, "this evidence demonstrates the Plaintiffs' wages were at all times connected to actual hours worked." *Id.*

The undisputed evidence is to the contrary. When Huei Chai was asked whether she agreed to pay Zhou "with a fixed monthly salary" and whether that monthly salary was net, she responded: "Yes. They all asked for net, and I made up the tax for them." ECF 93:18 at 23:23-24:2. Chai also testified that the work hours on Plaintiffs' wage statements "were not true hours[.]" ECF 93-18 at 23:5-18.

This testimony, combined with other evidence in the record, establishes that Plaintiffs received set compensation regardless of hours worked. Zhou, who was employed from March 9, 2020 through July 11, 2021, worked six days a week. ECF 93-1 at 4; ECF 93-2 at 2. He received a monthly salary of $4,200 from March 9, 2020 through December 31, 2020, and a monthly salary of $4,420 from January 1, 2021 through July 11, 2021, as net pay after making withholdings for taxes and deductions. ECF 93-1 at 4; ECF 93-2 at 2; ECF 93-3 at 2.

So too with Zeng. Zeng was employed from September 26, 2019 through October 26, 2020. ECF 93-1 at 6; ECF 93-2 at 4. He worked five days a week between September 26, 2019 and March 15, 2020, and four days a week from March 16, 2020 to October 26, 2020. ECF 93-1 at 6; ECF 93-2 at 4. He received a daily wage of $200 throughout his period of employment, as net pay after making withholdings for taxes and deductions. ECF 93-1 at 6; ECF 93-2 at 4.

Zhu's compensation structure was similar. Zhu worked six days a week from February 25, 2021 through June 30, 2021. ECF 93-1 at 5; ECF 93-2 at 3. He received a monthly salary of $4,200, as net pay after making withholdings for taxes and deductions. ECF 93-1 at 5-6; ECF 93-

United States District Court
Northern District of California

2 at 3.

Zheng also worked six days a week.  ECF 93-1 at 5; ECF 93-2 at 2-3.  He received a monthly salary of $3,500 from October 6, 2019 through December 31, 2019, and a monthly salary of $3,600 from January 1, 2020 through July 11, 2021, as net pay after making withholdings for taxes and deductions.  ECF 93-1 at 5; ECF 93-2 at 3.

On these undisputed facts, the Court finds that the amounts paid to Plaintiffs were fixed salaries that compensated Plaintiffs only for regular, non-overtime hours worked.  *See Hernandez,* 199 Cal. App. 3d at 725 (determining that oral agreement to compensate butcher at a rate of $300 per work was a fixed salary for the regular workweek).  Accordingly, Plaintiffs are entitled to summary judgment on their overtime compensation for any hours worked in excess of 8 hours per day under California law.[12]  The Court now turns to what amounts may be properly awarded for these overtime violations.

Plaintiffs total their overtime hours and related compensation due as follows:

|       | starting date | closing date | OT hours | hourly rate | OT Compensation |
|-------|---------------|--------------|----------|-------------|-----------------|
| Zeng  | 9/1/19        | 12/31/19     | 110      | $28.75      | $3,163          |
|       | 1/1/20        | 10/26/20     | 173      | $28.75      | $4,974          |
|       |               |              |          | total       | $8,137          |
|       |               |              |          |             |                 |
| Zheng | 10/6/19       | 12/31/19     | 233      | $23.22      | $5,410          |
|       | 1/1/20        | 12/31/20     | 663      | $23.88      | $15,832         |
|       | 1/1/21        | 10/19/21     | 539.5    | $23.88      | $12,883         |
|       |               |              |          | total       | $34,125         |
|       |               |              |          |             |                 |
| Zhou  | 3/9/20        | 12/31/20     | 468      | $27.87      | $13,043         |
|       | 1/1/21        | 7/11/21      | 277.5    | $29.33      | $8,139          |
|       |               |              |          | total       | $21,182         |
|       |               |              |          |             |                 |
| Zhu   | 2/25/21       | 6/30/21      | 214.5    | $27.87      | $5,978          |

ECF 92 at 14.

However, as explained above in connection with the FLSA claim, Plaintiffs have not

---

[12] Summary judgment, however, is **DENIED** as to Plaintiffs' claims for weekly overtime compensation under California law for the same reasons discussed in connection with Plaintiffs' FLSA claim.

United States District Court
Northern District of California

demonstrated that they have properly calculated weekly overtime hours or damages.[13]  Moreover, Plaintiffs' reliance on the calculation of the hourly rate under the federal framework for his state law claims is improper.  *See Sillah*, 154 F. Supp. 3d at 911 (explaining that for FLSA claims, "the regular rate actually paid to a salaried employee is obtained by dividing the employee's weekly wage by the number of hours worked each week[,]" but under the California Labor Code, "a salaried employee's regular rate of pay is calculated by dividing the total weekly salary by no more than 40 hours, regardless of the number of hours actually worked.") (internal quotations and citations omitted).  Accordingly, while the Court finds that Plaintiffs are entitled to summary judgment on their claim for overtime compensation due under California law (for hours exceeding eight in one day), the Court will not decide the amount of damages to which Plaintiffs are entitled on their state law overtime claim at this time due to the deficiencies in Plaintiffs' calculations.  *See Carter v. Jai-Put Enter. Inc.*, No. 18-CV-06313-DMR, 2020 WL 3545094, at *9 (N.D. Cal. June 30, 2020) (granting summary judgment in favor of the plaintiff on his claim for overtime based on hours worked in excess of eight per day but declining to decide the issue of damages).

### 2.   Claim 2 – Minimum Wage

Plaintiffs' second cause of action is for failure to pay minimum wage in violation California law.  ECF 20 ¶¶ 49-53.

California Labor Code § 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Cal. Lab. Code § 1194(a).  "Compliance with [California's] minimum wage law is determined by analyzing the compensation paid for each hour worked . . . ."  *Sheppard v. N. Orange Cty. Reg'l Occupational Program*, 191 Cal. App. 4th 289, 297 n.5 (2010) (citations omitted).  Moreover,

---

[13] Under the California Labor Code, " '[w]orkweek' and 'week' mean any seven consecutive days, starting with the same calendar day each week.  'Workweek' is a fixed and regularly recurring period of 168 hours, seven consecutive 24-hour periods."  Cal. Lab. Code § 500(b).

"[a]lthough the California Labor Code does not permit a plaintiff to recover liquidated damages for failure to pay overtime, . . . a plaintiff who brings a claim for failure to pay overtime may recover liquidated damages under California Labor Code § 1194.2 if the plaintiff also shows that the plaintiff was paid less than the minimum wage." *Sillah*, 154 F. Supp. 3d at 914 (citations omitted).

Plaintiffs assert that "because [they] receive[d] nothing for overtime hours, Defendants also violated state minimum wage law." ECF 92 at 15. They offer the below figures, which are preceded by the statement "[b]ecause the state overtime compensations have already included minimum wages, only *liquidated damages* will be counted at the end." *Id.*

|  | year | OT hours | Minimum hourly rate | Minimum wages |
|---|---|---|---|---|
| Zeng | 2019 | 110 | $15 | $1,650 |
|  | 2022 | 173 | $15.25 | $2,638 |
|  |  |  | total | $4,288 |
|  |  |  |  |  |
| Zheng | 2019 | 233 | $15 | $3,495 |
|  | 2020 | 663 | $15.25 | $10,111 |
|  | 2021 | 539.5 | $15.45 | $8,335 |
|  |  |  | total | $21,941 |
|  |  |  |  |  |
| Zhou | 2020 | 468 | $15.25 | $7,137 |
|  | 2021 | 277.5 | $15.45 | $4,287 |
|  |  |  | total | $11,424 |
|  |  |  |  |  |
| Zhu | 2021 | 214.5 | $15.45 | $3,314 |

ECF 92 at 15-16. The above table does not make clear how Plaintiffs reached these total figures, whether and how they correlate to the voluminous evidence in the record, whether they were tabulated on a daily, monthly, or other basis, or whether they account for periodic fluctuations in work schedules. Additionally, while the $15.00 minimum wage rate claimed above are based on San Jose Municipal Code § 4.100.040(D), which set the minimum wage at $15.00 as of January 1, 2019, beginning January 1, 2020, the minimum wage was to "increase by an amount corresponding to the increase, if any, in the cost of living, not to exceed 5%." *Id.* § 4.100.040(E). Plaintiffs do not explain whether or how the $15.25 and $15.45 figures on which they base a portion of the above calculations are based on the cost of living adjustment contemplated by the

United States District Court
Northern District of California

ordinance.  Without more from Plaintiffs demonstrating the basis for the alleged minimum wage violations and the amounts claimed above, their motion for summary judgment is **DENIED** on this claim.

### 3. Claim 4 – Waiting Time Penalties

Plaintiffs' fourth cause of action is for waiting time penalties under California Labor Code § 203.[14]  ECF 20 ¶¶ 60-64.

Section 203 states:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203(a).  The provision allows the court to:

> award an employee who is discharged or who quits a penalty equal to up to 30 days' worth of the employee's wages if an employer willfully fails to pay the employee his full wages immediately (if discharged) or within 72 hours (if he or she quits).  It is called a waiting time penalty because it is awarded for effectively making the employee wait for his or her final paycheck.  A waiting time penalty may be awarded when the final paycheck is for less than the applicable wage – whether it be the minimum wage, a prevailing wage, or a living wage.

*Diaz v. Grill Concepts Services, Inc.*, 23 Cal. App. 5th 859, 867 (2018) (internal quotations, citations, and modifications omitted).

For an employer to be liable for a violation of Section 203, "the employer's refusal to pay need not be based on a deliberate evil purpose to defraud work[ers] of wages which the employer knows to be due." *Maravilla v. Rosas Bros. Constr., Inc.*, 401 F. Supp. 3d 886, 900 (N.D. Cal. 2019) (internal quotations and citations omitted).  In this context, " 'willful' merely means that the

---

[14] Plaintiffs also seek attorney's fees and costs as recoverable under California Labor Code § 218.5, which provides, "[i]n any action brought for the nonpayment of wages . . . the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action."  Cal. Lab. Code § 218.5(a).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  employer intentionally failed or refused to perform an act which was required to be done." *Id.*

2  (internal quotations and citations omitted).

3       As discussed above, Plaintiffs have demonstrated that they are entitled to judgment as a

4  matter of law at least with respect to their daily overtime under California law that remains unpaid

5  as of each Plaintiff's last day of work.  It follows that Defendants' failure to pay Plaintiffs this

6  overtime is a violation of Section 203.  Accordingly, Plaintiffs' motion for summary judgment is

7  **GRANTED** as to this claim to the extent it is based on the daily overtime that remains unpaid.

8  However, due to the deficiencies in Plaintiffs' calculations discussed throughout this order, the

9  Court will not reach the amount of damages or penalties recoverable in connection with this claim

10  at this time.  *See Carter*, 2020 WL 3545094, at *10 (granting summary judgment in favor of the

11  plaintiff on claim for failure to pay wages upon termination but declining to calculate damages or

12  penalties owed).

### 4.       Claim 6 – Wage Statements

14       In their sixth claim for relief, Plaintiffs seek statutory penalties and attorney fees for

15  Defendants' failure to provide accurate wage statements.  ECF 20 ¶¶ 69-72.

16       California Labor Code § 226(a) requires employers to furnish accurate wage statements

17  that include, among other things, gross wages earned, total hours worked by the employee,[15] net

18  wages earned, the applicable hourly rates in effect during the pay period, and "the last four digits

19  of their social security number or an employee identification number other than a social security

20  number . . . ." *Id.*

21       Here, it is undisputed that the wage statements provided to Plaintiffs were inaccurate.

22  Huei Chai testified that the regular hours and the overtime hours indicated on the Plaintiffs' wage

23  statements did not reflect the actual hours worked.  ECF 93-18 at 23.  In addition, Defendants

24  responses to Plaintiffs' requests for admission establish that compensation paid to Plaintiffs in

25  cash were not included in their itemized wage statements, *see* ECF 93-1 at 4-6; ECF 93-2 at 2-4,

26  precluding an accurate reporting of gross wages, net wages, deductions, or applicable hourly rates.

27

28  _____

[15] This requirement is subject to exceptions not applicable here.  *See* Cal. Lab. Code § 226(j).

Those responses also establish that Plaintiffs' wage statements did not include the last four of digits of the employee's social security number or another employee identification number.  *See* ECF 93-1 at 4-6; ECF 93-2 at 2-3.  Based on this undisputed evidence, Plaintiffs have established that the wage statements they received did not comply with California Labor Code § 226(a) and are therefore entitled to summary judgment on this claim.  The Court now turns to whether Plaintiffs are entitled to the statutory penalties and reasonable attorney fees for the violations.

Section 226(e)(1) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Cal. Lab. Code § 226(e)(1).  In order to recover penalties under this provision, Plaintiffs must show "(1) a violation of the statutory provision setting forth criteria for wage statements, (2) that the violation was knowing and intentional, and (3) that the employee suffered an injury as a result of the violation."  *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 957 (N.D. Cal. 2016) (citations omitted).

The undisputed evidence in the record shows that Plaintiffs have satisfied their burden with respect to each element here.  As to the first element, Defendants failed to provide wage statements meeting several of the criteria set forth in Section 226(a)(1) as discussed above.

As to the second element, Defendants' failure to report cash payments on Plaintiffs' wage statements, together with Huei Chai's deposition testimony, all of which are undisputed, supports a finding that Defendants' failure to furnish accurate wage statements was knowing and intentional.  Chai testified that for all Plaintiffs, the work hours reflected on their wage statements were not the true hours they worked.[16]  ECF 93-18 at 23:14-18.  Furthermore, specifically with

---

[16] In contrast, the evidentiary sanctions imposed in connection with Plaintiffs' PAGA claim establish that with respect to the six-full-time non-cook workers Defendants employed, "[t]he hourly rates reflected on these employees' wage statements were their actual hourly rates."  ECF

respect to Zhou's wage statements, Chai testified that she made notations on Zhou's wage statements to keep track of cash payments "for proof[,]" but those notations were never shown to him. *See* ECF 93-17 at 5:10-9:16. Nor were the amounts of cash compensation included in his W-2. *See id.* at 9:21-10:13. When asked "[a]nd you and him had no agreement on the hourly rate; right[,]" Chai responded, "[b]ut I had to write down what was the hourly rate just for my own protection." ECF 93-18 at 26:13-16. She wrote down $15 per hour. *Id.* at 26:17-20.

With respect to the third and final element:

> An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine[17] from the wage statement alone one or more of the following:
> (i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a).
> (ii) Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period. Nothing in this subdivision alters the ability of the employer to aggregate deductions consistent with the requirements of item (4) of subdivision (a).
> (iii) The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer during the pay period.
> (iv) The name of the employee and only the last four digits of their social security number or an employee identification number other than a social security number.

Cal. Lab. Code § 226(e)(2)(B)(i)-(iv). As discussed above, it is undisputed that Plaintiffs' wage statements do not show gross wages earned, total hours worked, deductions, net wages earned, the last four digits of a social security number or other identification number, or applicable hourly rates. There is also no dispute that the required information cannot be ascertained without

---

90 at 2.

[17] For purposes of this provision, " 'promptly and easily determine' means a reasonable person would be able to readily ascertain the information without reference to other documents or information." Cal. Lab. Code § 226(e)(2)(C).

United States District Court
Northern District of California

reference to other documents or information, such as Defendants' notations of cash payments. Thus, the Court finds that Plaintiffs have demonstrated injury for purposes of recovering statutory penalties under Section 226(e)(1).  The Court now turns to the appropriate amount of those penalties.[18]

The record contains 38 wage statements for Zhou.  ECF 93 ¶¶ 16-17; ECF 93-11; ECF 93-12.  Applying a $50 penalty for the first inaccurate wage statement, then adding a $100 penalty for each inaccurate wage statement thereafter as allowed under Section 226(e)(1), Zhou is entitled to $3,750 [(1x$50) + (37x$100)] in statutory penalties.

The record contains 27 wage statements for Zeng.  ECF 93 ¶ 19; ECF 93-14.  Applying a $50 penalty for the first inaccurate wage statement, then adding a $100 penalty for each inaccurate wage statement thereafter, Zeng is entitled to $2,650 [(1x$50) + (26x100)] in statutory penalties.

The record contains 11 wage statements for Zhu.  ECF 93 ¶ 20; ECF 93-15.  Applying a $50 penalty for the first inaccurate wage statement, then adding a $100 penalty for each inaccurate wage statement thereafter, Zhu is entitled to $1,050 [(1x$50) + (10x100)].

The record contains 53 wage statements for Zheng.  ECF 93 ¶ 21; ECF 93-16.  Applying a $50 penalty for the first inaccurate wage statement, then adding a $100 penalty for each inaccurate wage statement thereafter, Zheng is entitled to the maximum aggregate penalty of $4,000 as permitted under Section 226(e)(1).

///

///

///

///

///

///

///

///

---

[18] The amount of costs and attorney fees to be awarded under Section 226(e)(1) will be determined at a later date, as will any interest to which Plaintiffs are entitled.

1

### 5. Claim 8 – PAGA

In their eighth cause of action, Plaintiffs seek civil penalties under PAGA in the following amounts:

| | | PAGA codes | penalty calculation | penalties per employee | number of employees | subtotal |
|---|---|---|---|---|---|---|
| cooks | minimum wage | Cal. Lab. Code § 1197.1 (a) | $100x1+$250x61 | $15,350 | 3 | $46,050 |
| cooks | overtime wages | Cal. Lab. Code § 558; IWC Order 5-2001, §20 | $50x1+$100x61 | $6,150 | 3 | $ 18,450 |
| cooks | wage statement violations | Cal. Lab. Code § 226.3 | $250x1+$1,000x61 | $61,250 | 3 | $183,750 |
| noncooks | wage statement violations | Cal. Lab. Code § 226.3 | $250x1+$1,000x61 | $61,250 | 6 | $367,500 |
| noncooks | split premium | Cal. Lab. Code § 558; IWC Order 5-2001, §20 | $50x1+$100x61 | $6,150 | 6 | $36,900 |
| | | | | | total | $652,650 |

ECF 92 at 26.

"PAGA provides for civil penalties for various Labor Code violations and authorizes 'aggrieved employees, acting as private attorneys general, to recover [those] penalties.' " *Estrada v. Royalty Carpet Mills, Inc.*, 15 Cal. 5th 582, 598-99 (2024) (quoting *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 379 (2014), *abrogated in part on other grounds by Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022)) (modifications in original).  Those penalties are "$100 for any initial violation, and $200 for each subsequent violation per pay period." *Taylor v. Interstate Grp., LLC*, No. 15-CV-05462-YGR, 2016 WL 861020, at *5 (N.D. Cal. Jan. 28, 2016) (citing Cal. Lab. Code § 2699(f)(2)).  The "penalties recovered on a PAGA claim are split between the state and aggrieved employees." *Estrada*, 15 Cal. 5th at 599.  "[I]f the representative plaintiff prevails, the aggrieved employees are statutorily entitled to 25% of the civil penalties recovered," plus reasonable attorney's fees and costs, and the LWDA "is entitled to 75%." *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1043 (N.D. Cal. 2014); *see also* Cal. Lab. Code § 2699(g)(1), (i).

The Court **DENIES** Plaintiffs' motion for summary judgment with respect to their claim for PAGA penalties for two reasons.

21

First, with respect to claimed penalties for split shift premiums,[19] Plaintiffs assert that "[b]ecause the cooks' hourly rates far exceed the minimum hourly rate, they were not entitled to shift break premiums.  Nonetheless, the non-cook employees were."  ECF 92 at 24.  This assertion is fatal to any claim to split shift premium penalties because as cooks, Plaintiffs did not suffer the violations for which they seek penalties on behalf of non-cooks.  Plaintiffs are thus not "aggrieved employees" and consequently, cannot serve as PAGA representatives for employees entitled to split shift premium penalties.  *See Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 678 (9th Cir. 2021) (concluding that the plaintiff "lack[ed] standing to bring a PAGA claim for [the defendant's] meal-break violations since he himself did not suffer injury.").

Second, Plaintiffs have failed to justify the penalty amounts claimed.  Plaintiffs proffer July 25, 2020 through December 6, 2022 as the proposed time period for PAGA penalties and assert that because there are 124 weeks within that period, there are 62 relevant pay periods based on Defendants' bi-weekly pay schedule.  ECF 92 at 23.  To support that calculation of the number of pay periods, Plaintiffs cite to an online calculator, rather than tabulating the number of pay periods using the evidence in the record.  *See* ECF 93 ¶ 25; ECF 93-21.  In addition, Plaintiffs do not make clear that the above figures exclude penalties that go beyond an employee's termination date.  *See Taylor*, 2016 WL 861020, at *5 (finding that only the pay periods during which the plaintiffs actually worked were at issue).  Moreover, Plaintiffs' showing as to the underlying overtime and minimum violations for which they seek penalties also suffers from the deficiencies discussed above in connection with Claims 1-3.

For these reasons, Plaintiffs' motion for summary judgment is **DENIED** with respect to

---

[19] A "split shift" is "a work schedule [for a single day] which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods."  *Saechao v. Landry's Inc*, No. C 15-00815 WHA, 2016 WL 1029479, at *6 (N.D. Cal. Mar. 15, 2016) (modifications in original).  "[W]hen an employee works a split shift, one hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday . . . ."  *Castro v. Emeritus Corp.*, No. 5:11-CV-03504 EJD, 2012 WL 601857, at *4 (N.D. Cal. Feb. 23, 2012) (citation omitted).

United States District Court
Northern District of California

1    their PAGA claim.

2               6.      Claim 7 – The UCL

3           Plaintiffs' seventh cause of action is for restitution and injunctive relief under the UCL.

4    ECF 20 ¶¶ 73-84.  In their motion, Plaintiffs assert that they "are entitled to restitution of unpaid

5    minimum and overtime compensation."  ECF 92 at 27.  They do not, however, cite any authority

6    entitling them to restitution under the UCL where, as here, it appears that they have an adequate

7    remedy available at law.  Accordingly, Plaintiffs' motion summary judgment is **DENIED** as to the

8    UCL claim to the extent they seek restitution.  *See Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308,

9    1311-13 (9th Cir. 2022) (concluding that the district court was required to dismiss the plaintiff's

10   equitable UCL claim where an adequate legal remedy was available).

11          Insofar as Plaintiffs seek injunctive relief under the UCL, summary judgment is also

12   **DENIED**.  While Plaintiffs contend that they "and the general public are entitled to injunctive

13   relief against Defendants' ongoing continuation of . . . unlawful, unfair or fraudulent business

14   practices[,]" they also assert that "because Defendants sold the restaurant and ceased operation in

15   January 2023 . . . , the injunctive relief becomes perhaps unnecessary at this point."  ECF 92 at 27.

16   Without clarification from Plaintiffs about whether they continue to seek injunctive relief and

17   whether the need for such relief is moot, summary judgment is not appropriate at this time.

18          Having addressed the merits of Plaintiffs' motion for summary judgment with respect to

19   their substantive claims, the Court now turns to whether they are entitled to summary judgment on

20   Defendants' affirmative defenses.

21          **B.      Defendants' Affirmative Defenses**

22          In their answers, Defendants assert laches, waiver, estoppel, failure to state a claim (based

23   on a purported ambiguity in the complaint as to whether Plaintiffs are classified as exempt or non-

24   exempt), unjust enrichment (based on Defendants' payment of the entirety of FICA taxes,

25   including Plaintiffs' portion), and unclean hands (based on Plaintiffs' purported failure to pay the

26   proper amount of FICA taxes) as affirmative defenses.  ECF 31 at 6; ECF 32 at 6.  They also

27   reserve the right to amend, modify, or supplement their affirmative defenses.  ECF 31 at 6; ECF

28   32 at 6.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    With respect to these asserted defenses, summary judgment for Plaintiff is appropriate for

2  two related reasons.  First, while Defendants bear the burden of proof on their affirmative

3  defenses, *see Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006),

4  they did not put forth any evidence in support of those defenses in their opposition brief.  Second,

5  Defendants did not respond to Plaintiffs' arguments about Defendants' affirmative defenses, and

6  by doing so, Defendants have waived them.[20]  *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095

7  n.4 (9th Cir. 2005) (determining that the plaintiff had abandoned two claims by failing to address

8  them in her opposition to the defendant's motion for summary judgment).

9    Accordingly, Plaintiffs motion for summary judgment is **GRANTED** as to Defendants'

10 affirmative defenses.

**IV.    CONCLUSION**

12    For the reasons set forth above, Plaintiffs' motion for summary judgment is **GRANTED**

13 **IN PART AND DENIED IN PART**.  The fifth cause of action is **DISMISSED**.

14    The Court will hold a case management conference in this matter on September 26, 2024.

15 The parties shall file a joint case management conference statement by noon on September 19,

16 2024.

17    **IT IS SO ORDERED.**

18 Dated:  August 15, 2024

_____

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

---

[20] In light of this finding, the Court does not reach Plaintiffs' remaining arguments about the viability of Defendants' affirmative defenses.